15-4422 Michael Abrams et al v. Nucor Steel Marion Inc Oral Argument, 15 minutes per side Mr. Cochran for the appellants Edward W. Cochran I do wish to reserve five minutes. You may. Your Honors, the appellants believe that this is actually a case of first impression for the Sixth Circuit because of the fact that previously air dispersion cases from permitted users under the Clean Air Act were preempted by the Clean Air Act. And there is no history of such claims in the Sixth Circuit. We undertook this case and prevailed on a motion against preemption. We then went forward with the case and the court ruled unfavorably to us, ruling that we had not, well to quote the judge, quote, connected the dots between exposure and harm to property. Mr. Cochran, reading this material, there's this overriding question that I've got to ask you. Why did you never test anybody's property in the affected area, never do a blood test of any of your clients? It just looks like you got all these people to agree to bring a lawsuit and then you didn't do anything. Well, Your Honor, first of all, we investigated for medical injury and found none. We don't believe the plaintiffs have currently provable medical injuries that they have incurred. We proceeded with the case on a property damage only based on the theory that manganese is a toxic material. You don't even have any manganese readings on any of the 129 property owners' property, right? Yes, we did soil testing, Your Honor. So did the soil testing yield higher than manganese background levels? We assert so, Your Honor. That's disputed by the appellees. So then did you get anybody to say that, geez, if you got higher than background readings on a particular piece of property, it's going to be worthless? Well, we had our toxicologist report that there would be harm to human health. And we had a real estate appraiser, a broker, send a report that any property that was subject to such an environmental claim would be... The guy up in Cleveland who'd never been to the area? That's right, Your Honor. But we never got to that in the... Does that mean, just as a practical matter, there was no real estate person in the affected area that could say that houses sold less than they would have if it was across the river or up here or whatever it is? Your Honor, under Ohio law, the owner of a residential property can testify as to his own loss of value of his property, and that was our intention in court. We've got to have a basis for it. You can't just say, geez, I think I probably wouldn't get as much as if I sold it. Well, the basis would be that the property is exposed to 23 air toxics every day, that the reasonable and foreseeable use of this property is residential. So the reasonable and foreseeable use includes, among other things, the breathing of the air every day. And I think that an owner of a property and a resident can testify that if the air on my property is not safe to breathe over a long period of time, that that impacts the value of my property. You say he could testify. Were there affidavits to that effect, or are you just saying that that's the inference from your Dr. Rutchick? Well, there's both an inference and the intention of the plaintiffs to so testify at trial. Were they going to testify that they had blood tests and it showed some evidence of physical harm? No, and we don't allege that any of these two plaintiffs, either of these two plaintiffs, have suffered a current medical injury from inhaling the air. We don't think that's the question in a property damage claim. You just went off on physical damages, so I ask that question. On the property, did you, other than avert that there was damage to the property, did you do soil samples on these Bellwether properties? Yes. You did. And that would be where on the record? Well, they were presented to the court in various briefings. They were attached to briefs and other documents as they were produced for the defense. And these soil readings are in the record of some of the pleadings. Do you have an exhibit number? You know, judge, this is my exhibit number one, shows property damage. Your Honor, they were exhibits to pleadings. I don't have the reference in the docket. Why don't we hold for you, counsel, if we can't find it in the record and you don't know whether you did or you didn't? Well, Your Honor, we don't think the soil testing is critical to the decision the judge made, which is that we must show something more than contamination of the air on the property. We have to show something more to connect other dots, including evidence of personal injury, evidence of air actually flowing over that particular address. We don't have evidence of personal injury. It is a matter of first impression. Help me here, counsel. I thought the issue that you weren't saying and the judge and your adversaries weren't requiring current health damage, that you're puking green, but that you had to have some evidence of potential future health damage, and that would be what reduces the value of the property, because you tried to get Rutchick in to say, if you live there for ten years, you're going to have these health problems, and nobody wants to buy such a property. Are you saying that that's not even the right standard, that any time you have any excess of any metal, let's say, you don't need anything else to show damage to property, because your real estate guy, the judge kept him out because he'd never been there, didn't know, and you say that your clients would have testified, but they didn't present affidavits or anything. Did they just say, you know, I attest that I tried to sell it, and I didn't get as much as I thought? I mean, you can't usually get to trial by not saying what you would do at trial, just claiming it. Did they do any such affidavits? I don't think so, Your Honor, and that's not the reason or the basis on which the court dismissed our case. I don't think the judge agrees that it is sufficient to show exposure, toxic material from the defendant, levels over the EPA's RFC, combined with 22 other toxic materials, and an expert's affidavit and testimony that says nothing more than I have reviewed the literature, I am a clinical toxicologist with experience in this field. Upon review of the literature, I am willing to say, and do say under oath, that exposure to these levels of these contaminants over that period of time in that small space. Okay, that's the expert, but just on the standard, I'm looking on page three. The judge says plaintiffs indicate they intend to show Nucor showed physical damage by demonstrating that manganese found on their properties is harmful to human health. Now, was he misstating your argument? It seems to me that he says, at least, that your argument is that the manganese is harmful to health. It's not just ugly or scary. Is he misstating your argument? Well, no, Your Honor. Manganese is found on the property in the air, in the soil. It's been washed off the surface of the homes on a regular basis. I don't think there's any question there's been a deposit of manganese on the property I think the judge was not willing to accept as a basis for the claim that there is expert testimony that the people of this small area community will experience harm to their health over a long time. That's not enough. I thought he wasn't an expert, but I'm just trying to be clear that the harmful to human health, prospectively even, is part of your claim. That's correct. Okay, good. Thank you. I would say that's the principal basis for the property damage because that is the reasonable, foreseeable use of the property. Okay. You'll have your five minutes for rebuttal, counsel.  Okay. Thank you, Your Honor. Good morning, Your Honors. My name is Mark Kessler, and as you know, I represent the Appalachian New Corps Steel Marion, Inc., along with my partner, Derek Diaz. Judge McKeague, you hit it right on the head. The real question was, is why did you not perform the test? And the real answer to that is they didn't perform the test because they're making a presumption. They want the court to presume damages. And in an indirect trespass case, we can't presume damages. What they're saying is, hey, if it's harmful to human health, then it automatically equals substantial physical damages to property or a substantial interference to their use. This is not a case of first impression, certainly not under Ohio common law that has addressed this issue for many, many years. They referenced Baker. We had an oral argument before the court made its decision, and the court said, hey, what's the case that you rely upon? The first case they said they relied upon was Little Hocking v. E.I. DuPont, which is referenced in both of our briefs. And when they referenced E.I. DuPont, they tried to distinguish it, and they can't, because Judge Marbley, who wrote the decision, clearly and very carefully articulated that you must demonstrate substantial physical damages to property, or in that case, substantial interference with use of the property. In this case, there is no presumption. There cannot be a presumption, and Judge Marbley addresses that, too. He says, listen, if we do not have, and he relies upon several cases in his opinion, but he says if we do, if we have that presumption, there's no difference between nuisance and trespass. Trespass has to have a higher bar, and that's what our trial judge specifically found following Baker and following Little Hocking. Judge Marbley said no useful purpose would be served by sanctioning actions and trespass by every landowner within 100 miles of a manufacturing plant, recognizing particulates come from manufacturing facilities, and it's going to happen. If it is harmful to human health, you do have a cause of action for trespass, but if it's an indirect trespass, you have to, you absolutely have to relate it back to the property damage, or what you have to do is identify that there's a substantial interference with the use of the property. I thought, and maybe I'm missing it, I thought here that the judge didn't even get to saying that they could raise a claim of harmful to human health once the experts were disqualified. You're right, Your Honor, he did. But what he also did in his memorandum opinion and order is he first identified the burden of proof in the first couple pages of it, and then he went to the Daubert proceeding and allowed the... But this argument you're making about nuisance versus trespass, and you have to show affirmative impairment of use to the property, that's sort of a second string to your bow, isn't it? It absolutely is. Okay, all right. You're spot on. A little confused there. No, I apologize for any confusion, but you're absolutely right. Judge Zahari, in this instance, did not abuse his discretion by excluding the testimony of Dr. Rutchak for being unscientific and unreliable. He provided specifically five reasons for his exclusion, and it's fully compliant with Daubert and Evidence Rule 702. In addition, in that preparatory, maybe this is why I missed it, their claims are for both trespass and nuisance. So even if you distinguish the two, you would still have to go to trial on one of them if they get to the harmful to health point. Well, if they got to it, Your Honor. Yes, I understand. You're absolutely right. And in this particular circumstance, even if it went back on something like that, they can't prove damages. As you saw and as you pointed out, one of the ways that you have to identify damages is by demonstrating the physical damages to property or an interference with its use. In this particular case, there are no damages because no one testified to anything. There's no damages testimony that was presented. It doesn't mean there isn't any damages. It just means they don't have any proof of damages. That's exactly right, Your Honor. Let's not go too far here in suggesting that dumping manganese on people's property is a good idea. No. There's just a complete failure of proof in this particular case. That's correct, Your Honor. That is absolutely correct. Your Honor, in this case, and to get to the point, plaintiff does not identify with any specificity throughout its briefing and certainly throughout argument that I was able to discern where the court abused its discretion. After reviewing the record, we feel comfortable that you should be left with a definite and firm conviction that the district court did not commit a clear error of judgment by excluding Dr. Rutchick. Unfortunately, he did not abuse his discretion. With that, Your Honor, I'm happy to answer any questions that you may have. Otherwise, I believe our brief and certainly the argument to date has already addressed the issues that we wanted to address here today. Okay. Anything else? Thank you, Your Honor. You have five minutes for rebuttal. Your Honor, we do believe that the question on property damage is whether there is any substantial interference with reasonable and foreseeable use. We do believe and assert that it's residential property and a foreseeable and reasonable use is constant breathing in the air by yourself, your children, and your family. And that this should be recognized as a substantial interference with the reasonable use of a residential property when sufficient manganese and other toxic materials. But although that may have some superficial intuitive appeal, your doctor says that anybody who lives on the land for more than 10 years is going to show signs of health problems because of these chemicals. And then the two people that you're putting forth here lived on the land for more than 10 years and showed no health problems. So how does that get explained away? Well, first of all, he didn't say that every person, but he said people in general would be subject to harm from being there 10 years. Secondly, the type of injury... So somebody, some unknown person on some unidentified piece of property may show signs of health problems 10 or more years down the road, and therefore all 129 people get to recover damages. A percentage of all the people living in this small neighborhood will suffer harm over a long period of time. We are not able to identify whether it's A, B, C, or D, E, F. So how do you meet even rudimentary causation standards there? Well, that's the point, your honor. This is not an injury case. There's no requirement that we show causation of any injury. All we need to show is substantial interference with reasonable use. That's an injury? Yes, the causation is deposit in the air and soil, etc., of the manganese. It's because of the manganese that you shouldn't stay there and breathe the air. So any plant in the United States that emits a chemical that is in excess of the EPA's limits is then liable on an indirect trespass theory for the property owners in some indeterminate range around every one of these factories in the United States. That's the ultimate conclusion that your theory would lead to, isn't it? No, not an indeterminate range. We do have an air model in this case with an isopleth that's drawn around the plant based on measuring air concentrations. It's a circle around the plant that's between a quarter of a mile and a half a mile from the plant, which is a residential. But that then ties to the health evidence, doesn't it? That is, any plant emits something. The quantities are what's important. The isopleth just shows you quantities, and then you seem to agree you've got to connect to harm, to health, somehow, somewhere, somehow down the road. And that only gets us to Dr. Rutchick. Isn't that the sequence? Yes, that's correct. We feel the judge was overly demanding and rejecting his work, which simply reviewed the literature, reviewed the exposure data, and the area in question. Well, you say he reviewed it, but isn't, in a sense, that's the problem. He doesn't say, and correct me if I'm wrong, he doesn't say the literature says that 10 nanograms per whatever is bad for you, and here's the reason that these people have 10 nanograms. He just says, generically, here's my opinion. Is that a fair reading of it? I think a fair reading of his opinion is that exposures at this level, in other words, in excess of the RFC for a long period of time, yes, your honor, at that low level, based on the statistical studies that have been done in other exposure areas around the world, that this will cause harm to human health over a long period of time. But when you say, based on all these studies, he doesn't give you any circumstance other than his ipsedixit, does he? That is, if I were doing it, not to take over your case, I would say, this article says 10 nanograms per whatever is going to be the level for harm, and I have tested X or Y, or I have definitively shown that it's going to be more than 10 nanograms. He doesn't give you any of that kind of numerical validity study, does he? He just says, I say so. Is that fair or not fair? I mean, I think I've read his statement. Not totally fair. He does review the exposure data and the isoplathy error model, and does confirm what levels of manganese exposure were, and he does compare to studies where that level of exposure governed and people suffered their harm. And I might point out, the harm to health from manganese exposure is primarily diminishment of neuropsych skills, things like short-term memory, word recognition, and so forth. It's been tested many times, but it's very subtle to observe a person over 5, 10, 20 years, and know whether his neuropsych abilities are diminished from 20 years ago, or a child who was born there. Has Dr. Rutchick's opinion ever been reduced to writing and published any place? His opinion in this case? His opinion about this hypothesis he has. I don't believe so, Your Honor. So he's got this theory. Has this theory been peer-reviewed anywhere? Well, the peer-reviewed studies stand for the proposition that exposures over these levels cause this kind of harm over long-term. Those have all been peer-reviewed. They're very available to everyone. It goes beyond that and says if you're within the .25 and the .5 area, therefore, you're going to get sick. Yes, because of the exposures. Are there any studies that confirm that? There are no health studies of that area. Has he ever testified before? Dr. Rutchick in other cases? Yes. I believe he has. Has this theory he's advancing here ever been accepted? I don't think he's testified to this effect in another case. Okay. Seems to me that's kind of your problem. Anything else, judges? Thank you. The case will be submitted. Clerk may call the next case.